# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.            **Case No. 09-CR-243**

**DAVID DONAGHY**
   **Defendant.**

## SENTENCING MEMORANDUM

  Defendant David Donaghy pleaded guilty to possession of child pornography, and I set the case for sentencing. In imposing sentence, the district court must first calculate the advisory sentencing guideline range, then determine the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., Gall v. United States, 552 U.S. 38, 49-50 (2007); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). This memorandum sets forth written reasons for these determinations.

## I. GUIDELINE CALCULATION

  Defendant's pre-sentence report ("PSR") set a base offense level of 18 under U.S.S.G. § 2G2.2(a)(1), with enhancements of 2 levels because the offense involved depictions of a prepubescent minor or a minor who had not attained the age of twelve years, § 2G2.2(b)(2), 4 levels because the offense involved material portraying sadistic or masochistic conduct or other depictions of violence, § 2G2.2(b)(4), 2 levels for use of a computer, § 2G2.2(b)(6), and 4 levels based on number of images possessed, § 2G2.2(b)(7)(B), for an adjusted level of 30. The PSR then recommended a 3 level reduction for acceptance of responsibility under § 3E1.1 based on defendant's timely guilty plea, for a final level of 27. Coupled with defendant's

criminal history category of I, level 27 produced an imprisonment range of 70-87 months. Neither side objected to these calculations, which I found correct and adopted accordingly.

## II. SECTION 3553(a)

**A.    Sentencing Factors**

In imposing the final sentence, the district court must consider:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant. In making this determination, the district court may not presume that the guideline sentence is the correct one. Nelson v. United

States, 129 S. Ct. 890, 892 (2009); Rita v. United States, 551 U.S. 338, 351 2465 (2007). The court is also free, in evaluating the guidelines' recommendation, to consider whether the Sentencing Commission fulfilled its "characteristic institutional role" in adopting the particular guideline. See Kimbrough v. United States, 552 U.S. 85, 109 (2007). Ultimately, the district court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. See Gall, 552 U.S. at 49-50.

**B.   Analysis**

   **1.   The Offense**

The Milwaukee Police Department received information from a confidential informant that he shared communications regarding child pornography with an individual using a certain screen name. Police learned that defendant used this screen name, and on February 7, 2008, went to his residence. Defendant allowed the officers in, agreed to answer questions, and admitted using the screen name. He also admitted viewing child pornography on his computer. He stated that he had not downloaded any child pornography recently and had deleted the last of his collection about two weeks previously.

Defendant gave consent to search his computer and – consistent with his statement – the detectives located no undeleted images. However, using software, they were able to locate 380 previously deleted images in the computer's "unallocated space." About 370 of the images appeared to depict prepubescent children, including images of the children engaged in sexual intercourse, beastiality, masturbation, and lascivious exhibitions of their genitals. Several of the children depicted were identified, and I reviewed their victim impact letters.

3

### 2. The Defendant

Defendant was thirty-six years old, and although his prior record was very limited, consisting of a disorderly conduct conviction from 1998, the particular circumstances of that case caused me some concern. According to the PSR, two females advised police that defendant engaged in lewd and lascivious behavior in the parking lot of the Brookfield Square Mall, appearing to masturbate in front of them. Defendant was able to complete the probationary term imposed in that case without incident and incurred no further contacts until this case arose.

Defendant's background was otherwise positive. He graduated high school, obtained a communications degree from Marquette University, and compiled a solid employment record, working as a bartender for the past ten years. His family remained supportive, and I received letters from his mother, father, sister, and a friend. Several friends and family members appeared in support at the sentencing hearing.

Defendant had no apparent substance abuse problems, although he did submit two positive tests on pre-trial release in this case when he improperly took prescription medication, apparently as a coping mechanism to deal with stress and trouble sleeping. He attended drug counseling at Attic Correctional Services and seemed to be doing well, learning coping mechanisms to deal with anxiety.

### 3. The Guidelines and Purposes of Sentencing

The guidelines recommended that defendant serve 70-87 months in prison in this case. However, that range was based on U.S.S.G. § 2G2.2, a provision that courts across the country have recognized is seriously flawed and accordingly entitled to little respect. See, e.g.,

4

United States v. Dorvee, 604 F.3d 84, 95 (2d Cir. 2010); United States v. Tews, No. 09-CR-309, 2010 WL 1608951, at *3 (E.D. Wis. Apr. 20, 2010) (citing United States v. Howard, No. 8:08CR387, 2010 WL 749782 (D. Neb. Mar. 1, 2010); United States v. Manke, No. 09-CR-172, 2010 WL 307937 (E.D. Wis. Jan. 19, 2010); United States v. Raby, No. 2:05-cr-00003, 2009 WL 5173964 (S.D. W. Va. Dec. 30, 2009); United States v. Burns, No. 07 CR 556, 2009 WL 3617448 (N.D. Ill. Oct. 27, 2009); United States v. McElheney, 630 F. Supp. 2d 886 (E.D. Tenn. 2009); United States v. Phinney, 599 F. Supp. 2d 1037 (E.D. Wis. 2009); United States v. Grober, 595 F. Supp. 2d 382 (D.N.J. 2008); United States v. Stern, 590 F. Supp. 2d 945 (N.D. Ohio 2008); United States v. Doktor, No. 6:08-cr-46, 2008 WL 5334121 (M.D. Fla. Dec. 19, 2008); United States v. Johnson, 588 F. Supp. 2d 997 (S.D. Iowa 2008); United States v. Noxon, No. 07-40152, 2008 WL 4758583 (D. Kan. Oct. 28, 2008); United States v. Ontiveros, No. 07-CR-333, 2008 WL 2937539 (E.D. Wis. July 24, 2008) (Griesbach, J.); United States v. Hanson, 561 F. Supp. 2d 1004 (E.D. Wis. 2008); United States v. Shipley, 560 F. Supp. 2d 739 (S.D. Iowa 2008); United States v. Baird, 580 F. Supp. 2d 889 (D. Neb. 2008)).

In Manke, 2010 WL 307937, at *5-6, and Phinney, 599 F. Supp. 2d at 1041-43, I set forth in detail the history of this guideline as it pertains to possession defendants, and I incorporate that discussion herein. In sum, the guideline results from congressional directives, some of which the Sentencing Commission actively opposed, rather than Commission study and expertise, and because of enhancements applicable in most cases, produces a range at or near the statutory maximum even for offenders in criminal history category I.

Defendant received four specific guideline enhancements in this case: 2 levels for possession of material involving children under age twelve, an enhancement applicable in 94.8% of sentences under § 2G2.2 in fiscal year 2009; 4 levels for possession of material

5

involving sadistic or violent conduct, applicable in 73.4% of cases in 2009; 2 levels for use of a computer, applicable 97.2% of the time; and for number of images, applicable in some form 96.6% of the time, with 63.1% receiving a full 5 level increase.  See Dorvee, 604 F.3d at 96; United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009 36-37.  As the Second Circuit recently explained, these enhancements produce a sentence approaching the statutory maximum, based solely on characteristics that are all but inherent to the crime of conviction, an approach fundamentally inconsistent with § 3553(a).  Dorvee, 604 F.3d at 96.

Aside from applying in virtually all cases, these enhancements suffer from additional flaws.  The Commission itself opposed the use of a computer enhancement prompted by Congress because it fails to distinguish serious commercial distributors of online pornography from more run-of-the-mill users.  See Dorvee, 604 F.3d at 96.  As the Commission noted, the enhancement also does not make a great deal of sense because online pornography generally comes from the same pool of images found in specialty magazines or adult bookstores.  See Hanson, 561 F. Supp. 2d at 1009-10.

The number of images enhancement makes little sense because, as a result of internet swapping, defendants readily obtain the necessary number of images with minimal effort. Further, to the extent that number of images may serve as a proxy for harm, the guideline overstates that harm. The worldwide market for child pornography is so vast that the relative market impact of several hundred additional images is minuscule, yet results in a significant increase in the guidelines.  See Raby, 2009 WL 5173964, at *7.

Finally, the 4-level enhancement for depictions of sadistic conduct applies whether or not the defendant specifically sought out such material. To the extent that harsh punishment

6

is necessary to reduce the demand for material that results in the greatest harm to children, a defendant who does not seek out the worst should not receive the same sentence as someone who does. See Hanson, 561 F. Supp. 2d at 1009. The record contained no evidence that defendant sought out such material.

I therefore found that the current guidelines provided little guidance in this case. Before Congress got involved, the Commission studied the issue and devised an approach whereby possession offenders received a base offense level of 10, with a possible enhancement of 2 levels based on the age of the minors depicted. With a 2 level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, in criminal history category of I that approach produces a range of 6-12 months. See Phinney, 599 F. Supp. 2d at 1043 (discussing the original possession guideline, U.S.S.G. § 2G2.4). The range defendant faced here was much higher because of changes instigated by Congress, which did not exemplify the Commission's exercise of its characteristic institutional role. Under the specific circumstances of the case, I found a sentence along the lines originally proposed by the Commission sufficient but not greater than necessary.

Defendant's crime was undoubtedly serious, and some period of confinement in prison was needed to provide just punishment. Children are assaulted to create this material, and they feel re-victimized every time the images are viewed, as poignantly explained in the victim impact letters. Defendant seemed to understand this, as he indicated during his allocation. Indeed, it appeared that he realized this even before he got caught, as he had deleted his collection before he was approached by the police. Nothing in the record suggested that he did this because he knew the police were on to him; rather, it suggested that he realized the wrongfulness of his conduct prior to the involvement of law enforcement and thus mitigated the

7

offense to some extend. I also noted that defendant cooperated fully when approached by police, admitting what he had done, despite the deletion, and allowing a search of his computer. Finally, there was no evidence that defendant produced any images, shared them with any child, or profited from them in any way. Therefore, a prison term consistent with the Commission's original range sufficed to provide just punishment.

A prison sentence consistent with that range, followed by a lengthy period of supervision with strict conditions, also sufficed to deter and protect the public. Defendant had been involved in sex and pornography addiction counseling with Roger Northway at Pathways Counseling Center since May 2008, shortly after he was approached by the police and long before he was charged in this case. Northway prepared a report, in which he indicated that, according several tests, defendant presented a low risk of re-offending and was a good candidate for supervision. Defendant demonstrated no significant pathology and appeared to be an otherwise well-functioning person psychologically. Northway stated that defendant "may have the lowest risk scores of any man I have evaluated in almost fifteen years of doing sex offender specific treatment." Northway concluded that defendant was "appropriate for minimal punishment and no further deterrent effect is likely to occur from lengthy incarceration. He is likely to be a compliant person on supervision."[1]

Finally, the record contained no indication that defendant had or likely would commit a contact offense with a child, which is always a great concern in these types of cases. In his report, Northway indicated that "[o]nly a small percentage of internet child pornography users escalate to commit hands on sex offenses," and that there is no evidence defendant had

---

[1]Northway also appeared at defendant's sentencing hearing.

8

"hands on contact with minors." Defendant's sister expressed no concern for her kids.

I was somewhat concerned by defendant's 1998 conviction, which suggested that he might do more than sit behind a computer. However, that case, where defendant appeared to masturbate in front of adult females, was a far cry from child molestation. I was also concerned by defendant's use of prescription drugs as a coping mechanism, but I concluded that conditions of supervision could be crafted to deal with that; I did not see it as requiring significantly more prison.

The government challenged the approach I took in Phinney, arguing that use of the oldest version of U.S.S.G. § 2G2.4 amounted to cherry picking. The government indicated that the last version of § 2G2.4 (before it was folded into § 2G2.2) would have resulted in a final offense level of 24. As I explained in Phinney, I did not credit the original version of § 2G2.4 because it produced the lowest sentence; I credited it because it was the last version of the guideline to be based on Commission study and expertise. Subsequent versions were based on congressional changes, many of which the Commission opposed. The Supreme Court has instructed district judges to give greater respect to guidelines that reflect the Commission's exercise of its appropriate institutional role. See Kimbrough, 552 U.S. at 109. That is precisely what I did in Phinney.

The government next cited United States v. Goldberg, 491 F.3d 668 (7th Cir. 2007), where the court of appeals reversed a 1 day sentence in a child pornography case. However, the government failed to recognize the significant factual differences between this case and Goldberg. The government also overlooked the significant legal developments in this area since Goldberg.

In Goldberg, the Seventh Circuit reversed as unreasonable a sentence of 1 day followed

9

by 10 years supervised release. The defendant in that case, twenty-three years old and a convicted drug offender, downloaded file-sharing software that gave him access to a web site called "100% PreTeenGirlPics." Over a period of eighteen months, he downloaded hundreds of pornographic photographic images, some depicting children as young as two or three being vaginally penetrated by adult males. He offered these images to other subscribers to the web site to induce them to send similar images in return. He masturbated while viewing the pornographic images. Goldberg, 491 F.3d at 669. The record in that case contained the report of a psychologist:

> who stated that the defendant has been using pornography for more than a decade, that he "believed he was smart enough not to get caught and if he were caught he believed he would not have any consequences," that he has "little knowledge, understanding or empathy for the little girls depicted in the images," that "he began using pornography when he was 12-13 and continues to fantasize about the same age girls he looked at then," that he has "persistent sexual interest in adolescent males and females," that he is a "pedophile," that he "has admitted to other deviant behaviors, namely voyeurism, scatological phone calls and the stealing of a 14 year old girl's panties," that he has "sociopathic traits," that "he doesn't think of the consequences of his behavior," that "he has had two convictions within two years," and that "he has little respect for the law or social conventions."

Id. at 673.

This defendant was nothing like Jeremy Goldberg. While there were some similarities in the number and type of images each possessed, this defendant had a more limited prior record, he showed remorse and insight into his behavior, and he involved himself seriously in treatment, with the provider indicating that he presented a very low risk of re-offending. This defendant was also older, better educated, and had done positive things with his life, unlike the defendant in Goldberg, who, according to the Seventh Circuit's opinion, was essentially a sociopath. Further, the sentence in Goldberg included no meaningful custodial component,

10

unlike the sentence I imposed in this case.

The government noted that the Seventh Circuit in Goldberg reversed the 1 day sentence, finding it unreasonable for an offense that Congress and the public considered grave. The government indicated that a comparison of Phinney and Goldberg revealed an essential conflict in approach. The government stated that much of Phinney's criticism of the development of the child pornography guidelines was based on a criticism of congressional actions to increase penalties and guideline ranges for child pornography possession, and in Goldberg, the Seventh Circuit held that a sentence so far below the guidelines could not be justified by idiosyncratic penological views or disagreement with congressional policy.

My criticisms of the guideline in Phinney were hardly idiosyncratic. Judges across the country have agreed that this guideline seriously flawed. See Tews, 2010 WL 1608951, at *3 (collecting cases). In Dorvee, 604 F.3d at 98, the Second Circuit recently reversed as substantively unreasonable a sentence based on this guideline, stating:

> District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under § 2G2.2 – ones that can range from non-custodial sentences to the statutory maximum – bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results. While we recognize that enforcing federal prohibitions on child pornography is of the utmost importance, it would be manifestly unjust to let Dorvee's sentence stand. We conclude that Dorvee's sentence was substantively unreasonable and, accordingly, must be revisited by the district court on remand.

The government acknowledged that Congress is not above criticism but argued that courts are not free to disregard Congress's legitimate role in setting public policy. Congress obviously believes that child pornography is an important problem which should be addressed sternly, and that belief is entitled to at least some deference, the government contended.

However, it is important to note in this regard that Goldberg pre-dates Kimbrough, in

11

which the Supreme Court held that courts need not defer to guidelines based on congressional policy decisions. In light of Kimbrough, the Seventh Circuit has acknowledged that district judges are at liberty to reject any guideline on policy grounds, so long as they act reasonably when using that power. United States v. Pape, 601 F.3d 743, 749 (7th Cir. 2010); United States v. Corner, 598 F.3d 411, 414-15 (7th Cir. 2010) (en banc).

The government argued that the approach in Phinney also raised serious questions of consistency. The government indicated that imposing a sentence in a child pornography case which was a small fraction of the sentence called for by the guidelines, when sentences within, or at least close to, the guideline range are the norm in federal courts, raised a significant problem. The Commission's statistics do not support the government's argument. In fiscal year 2009, judges sentenced within the range in § 2G2.2 cases less than 45% of the time, compared to nearly 56.8% in all cases. More significantly, they sentenced below the range based on Booker and § 3553(a) about 38% of the time, far higher than the roughly 13% variance rate in all cases. United States Sentencing Commission, Sourcebook of Federal Sentencing Statistics (2009) (Table N and Table 28). In its second quarter 2010 report, the Commission noted that judges sentenced within the range just 43.6% of the time in child pornography cases, compared to 54.8% of the time in all cases. The Booker variance rate was 14% for all cases, but 36.3% in § 2G2.2 cases. United States Sentencing Commission, Second Quarter FY10 Quarterly Sentencing Update (June 1, 2010) (Table 1 and Table 5). This suggested that courts were frequently using their discretion to impose non-guideline sentences in these cases.[2] In any event, as the government acknowledged, each case must be

---

[2] The government noted that in the other cases cited in Phinney the courts generally imposed significant prison sentences, ranging from 12 months and 1 day to 144 months, with

12

considered based on its own facts, and the sort of uniformity created by mandatory guidelines does not survive Booker.

I agreed with the government that it was necessary in this case to strike a proper balance between the positives in defendant's conduct and background, and the serious nature of the offense. The sentence I imposed, which contained a significant custodial component, struck that balance.

## III. CONCLUSION

Under all the circumstances of this case, and for the reasons set forth above and on the record, I found a sentence of 12 months and 1 day sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence provided just punishment, deterrence of others, and, coupled with a lengthy period of supervision, protection of the public. The sentence acknowledged defendant's remorse and efforts in treatment, but also his prior record.

Upon completion of the prison sentence, I ordered defendant to serve 12 years of supervised release. The guidelines recommended lifetime supervision, see U.S.S.G. § 5D1.2(b), but given his minimal record and progress in treatment, I found this term sufficient to ensure monitoring. As conditions of supervision, I restricted defendant's computer usage; required him to participate in a mental health treatment program, including sex offender treatment; forbid him from possessing sexually explicit material; required him to register with state and local authorities, as required by law; required him to provide access to all financial information requested by the supervising probation officer; and required him to perform community service work in lieu of a fine. Other terms and conditions of the sentence appear

---

an average of 65 months. However, some of those cases involved a receipt charge, which carries a mandatory minimum sentence of 5 years. See 18 U.S.C. § 2252(b)(1).

13

in the judgment.

Dated at Milwaukee, Wisconsin, this ___ day of June, 2010.

_____
LYNN ADELMAN
District Judge